# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

---

13-CV-00181 (JFB)

---

Leonardo Rosario,

Petitioner,

Versus

Superintendent Timothy Laffin,

Respondent.

---

**MEMORANDUM AND ORDER**
June 11, 2014

---

Joseph F. Bianco, District Judge:

Leonardo Rosario ("Rosario" or "petitioner") petitions this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his conviction in a state court. On December 9, 2008, petitioner entered pleas of guilty to two counts of assault in the second degree (N.Y. Penal Law § 120.05), two counts of vehicular assault in the second degree (N.Y. Penal Law § 120.03), two counts of operating a motor vehicle while under the influence of alcohol as a felony (N.Y. Veh. & Traf. Law § 1192(3)), three counts of assault in the third degree (N.Y. Penal Law § 120.00), three counts of reckless endangerment in the second degree (N.Y. Penal Law § 120.20), one count of reckless driving (N.Y. Veh. & Traf. Law § 1212), and one count of passing a red light (N.Y. Veh. & Traf. Law § 1111.D1).

Before petitioner pleaded guilty to these charges, the trial judge indicated his intention to sentence petitioner to an aggregate term of five years' imprisonment, followed by three years of post-release supervision. After entry of petitioner's guilty plea, the trial judge sentenced petitioner accordingly, *i.e.*, to five years' imprisonment followed by three years of post-release supervision. However, after sentencing petitioner, the trial judge learned that the law required him to impose five years of post-release supervision. Consequently, the trial judge held a new hearing, during which he explained the mistake to petitioner and petitioner's counsel. Petitioner's counsel indicated that it would be appropriate for the judge to modify petitioner's sentence, and the judge resentenced petitioner to five years of post-release supervision to follow his five years in prison.

In the instant petition, petitioner raises the following two issues related to his resentencing: (1) ineffective assistance of counsel, and (2) the trial judge's failure to advise him of his right to withdraw his guilty plea. For the reasons set forth herein, the Court concludes that there is no basis for habeas relief, and denies the petition in its entirety.

I. BACKGROUND

A. Facts

The Court has adduced the following facts from the instant petition and the underlying record.

In the early morning of July 5, 2008, petitioner drove his car through a red light at the intersection of Merrick Avenue and Sunrise Highway, and he collided with a taxi cab. (*See* P. at 9–10; Decision & Order, at 1, *People v. Rosario*, Ind. No. 1771N-08 (N.Y. Sup. Ct. Jan. 23, 2012).)[1] Four of the taxi's occupants were seriously injured. (Decision & Order, at 1, *People v. Rosario*, Ind. No. 1771N-08 (N.Y. Sup. Ct. Jan. 23, 2012).) Upon arriving at the scene of the accident, police officers observed petitioner leaning against his car in order to maintain his balance. (*Id.*) Petitioner told the police officers that he had consumed vodka within four hours of the accident. (*Id.*) The officers arrested petitioner at approximately 3:35 a.m., and took him to the Nassau County Medical Center. (*Id.* at 1–2.)

Petitioner's blood was drawn at the hospital, and analysis of his blood showed a blood alcohol content of .12 percent. (*Id.* at 2.) The relevant forensic report indicates that the crime laboratory received the specimen on July 8, 2008, and that the date of incident was July 5, 2008. (*Id.*) However, the report stated (erroneously) that the blood sample had been drawn on June 5, 2008. (*Id.*)

B. Procedural History

1. State Court Proceedings

a. Charges

A Nassau County grand jury returned indictments charging petitioner with two counts of assault in the second degree (N.Y. Penal Law § 120.05), two counts of vehicular assault in the second degree (N.Y. Penal Law § 120.03), two counts of operating a motor vehicle while under the influence of alcohol as a felony (N.Y. Veh. & Traf. Law § 1192(3)), three counts of assault in the third degree (N.Y. Penal Law § 120.00), three counts of reckless endangerment in the second degree (N.Y. Penal Law § 120.20), one count of reckless driving (N.Y. Veh. & Traf. Law § 1212), and one count of passing a red light (N.Y. Veh. & Traf. Law § 1111.D1). (*See* Decision & Order, *People v. Rosario*, Ind. No. 1771N-08 (N.Y. Sup. Ct. Jan. 23, 2012).)

b. Guilty Plea

Represented by counsel, petitioner entered pleas of guilty to all charges against him on December 9, 2008. (P. at 13.) Before petitioner entered guilty pleas, the trial judge advised petitioner of the rights he was relinquishing. (*See id.* at 5–6.) The trial judge also informed petitioner of the maximum sentences for each charge. Concerning assault in the second degree, he told petitioner that each count carried "a maximum sentence of seven years plus three years post-release supervision." (*Id.* at 7.) The trial judge indicated, however, that he intended to "cap [his] sentence in the aggregate of five years," in addition to

---

[1] "P." refers to the plea transcript.

2

"three years of post-release supervision." (*Id.* at 8.) The trial judge continued, "If, in my judgment, I feel that I must sentence you to more than five years, I will let you withdraw your plea and you will not be in any worse legal position than you are here today." (*Id.* at 9.) Petitioner stated that he understood what the trial judge had just told him. (*Id.*)

As part of the plea colloquy, petitioner admitted to the facts supporting the charges to which he was pleading guilty. Specifically, he admitted that, on July 5, 2008, he was driving recklessly while intoxicated, ran a red light at the intersection of Merrick Avenue and Sunrise Highway, and assaulted two people with his vehicle, causing them serious physical injury. (*Id.* at 9–10.) Petitioner then entered pleas of guilty to all charges against him. (*Id.* at 12–13.)

c. Sentencing

Petitioner and his counsel appeared in court for sentencing on February 20, 2009. Petitioner's counsel requested leniency. (S. at 9.[2]) Specifically, petitioner's counsel asked the trial judge "to cap [petitioner's] punishment at five years," as the trial judge had indicated he would do at petitioner's plea hearing. (*Id.* at 8.)

The trial judge followed defense counsel's recommendation and imposed the following sentence. For each count of assault in the second degree, he sentenced petitioner to five years' imprisonment followed by three years of post-release supervision. (*Id.* at 13.) He sentenced petitioner to a term of one-and-one-third to four years' imprisonment for each count of vehicular assault in the second degree and driving while intoxicated. (*Id.* at 13–14.)[3] He further sentenced petitioner to one year's imprisonment for each count of assault in the third degree and reckless endangerment. (*Id.* at 14.) Finally, he sentenced petitioner to thirty days' imprisonment for reckless driving, and fifteen days' imprisonment for passing a red light. (*Id.*) The trial judge ordered all sentences to run concurrently, thereby resulting in an aggregate sentence of five years' imprisonment followed by three years of post-release supervision. (*Id.*)

d. Resentencing

On June 2, 2009, the trial judge informed petitioner and his counsel that he had made a mistake in sentencing petitioner. Specifically, he explained that the law required him to sentence petitioner to five years of post-release supervision, instead of the three years of post-release supervision that he had imposed. (*See* R. at 2.[4]) The trial judge told petitioner, "You had to have been aware of that at the time of the sentence. So, you have various options, which I'm sure you can talk about with your attorney." (*Id.*) The trial judge then informed petitioner's counsel that he could resentence petitioner to five years of post-release supervision, and petitioner's counsel indicated that such a sentence would be appropriate. (*Id.* at 3.) Accordingly, the trial judge adjusted petitioner's sentence to include five years' post-release supervision. (*Id.*)

Petitioner's counsel also requested that petitioner be imprisoned at the Fishkill Correctional Facility, where he could receive treatment for his problem of driving

---

[2] "S." refers to the sentencing transcript.

[3] After sentencing, defendant admitted to having been convicted of a prior felony conviction for driving while intoxicated. (S. at 16–17.) As a result, the trial judge increased petitioner's sentence for vehicular assault to a term of two to four years' imprisonment for each count. (*Id.* at 18.)

[4] "R." refers to the resentencing transcript.

while intoxicated. (*Id.*) The trial judge agreed to make such a recommendation. (*Id.* at 3–4.)

### e. Direct Appeal

Petitioner filed an appeal in the Supreme Court, Appellate Division (the "Appellate Division"), arguing that his sentence was excessive. (*See generally* Appellant Br., *People v. Rosario*, AD No. 2009-06536 (N.Y. App. Div.).) On January 25, 2011, the Appellate Division determined that petitioner's argument was without merit, and affirmed the judgment of conviction and sentence. *See People v. Rosario*, 915 N.Y.S.2d 511 (N.Y. App. Div. 2011). The New York Court of Appeals denied petitioner's application for leave to appeal on April 11, 2011. *See People v. Rosario*, 16 N.Y.3d 862 (2011).

### f. Collateral Attack in State Court

On June 28, 2011, petitioner, proceeding *pro se*, filed a motion to vacate his judgment of conviction pursuant to N.Y. Crim. Proc. Law § 440.10 in New York Supreme Court. (*See generally* Mot. to Vacate J., *People v. Rosario*, Ind. No. 1771N-08 (N.Y. Sup. Ct. June 28, 2011).) For the first time, petitioner contended that the indictments against him had been supported by legally insufficient evidence because the forensic report stated mistakenly that the blood sample showing a blood alcohol content of .12 percent had been drawn on June 5, 2008. (*Id.* at 5–9.) Petitioner also argued that he was denied the right to effective assistance of counsel, in that his counsel had failed to inform him that he could have withdrawn his guilty plea after learning that the court mistakenly sentenced him to three years of post-release supervision. (*Id.* at 9–10.) Finally, petitioner asserted that his guilty plea had not been made knowingly, voluntarily, and intelligently, because the trial judge had failed to advise him of the mandatory five-years of post-release supervision that resulted from his guilty plea. (*Id.* at 11–13.)

The Nassau County District Attorney opposed the motion on August 17, 2011. (*See generally* Mem. in Opp. to Mot. to Vacate J., *People v. Rosario*, Ind. No. 1771N-08 (N.Y. Sup. Ct. Aug. 17, 2011).) Represented by new counsel, petitioner replied on November 14, 2011. (*See generally* Reply Mem. in Supp. of Mot. to Vacate J., *People v. Rosario*, Ind. No. 1771N-08 (N.Y. Sup. Ct. Nov. 14, 2011).) In his reply, petitioner argued that the trial judge had committed error by failing to advise him of his options at resentencing. (*Id.* at 9.) Specifically, in the midst of his ineffective assistance of counsel argument, petitioner wrote, "The Court, understandably, but incorrectly assumed that Mr. Rosario's attorney had discussed the re-sentencing with Mr. Rosario. Unfortunately based upon that misunderstanding the Court did not inquire of Mr. Rosario if he knew and understood [his] various rights, or options, at the time of his sentence. There is simply nothing in the sentencing record to allow this or any court to reason that the sentence was a knowing sentence on behalf of Mr. Rosario. In fact with the attached affidavit of Mr. Rosario, it is quite clear and irrefutable that he was not aware of his rights." (*Id.* at 9 ¶ 29.)

On January 23, 2012, the court denied petitioner's motion in its entirety. (*See* Decision & Order, *People v. Rosario*, Ind. No. 1771N-08 (N.Y. Sup. Ct. Jan. 23, 2012).) As to petitioner's claim concerning the blood test, the court concluded that petitioner's guilty plea precluded him from challenging the sufficiency of the evidence presented to the grand jury. (*Id.* at 6.) In addition, the court determined that petitioner received effective assistance of counsel during resentencing. (*Id.* at 8.)

Thereafter, petitioner, proceeding *pro se*, filed a motion in the Appellate Division on February 22, 2012, seeking leave to appeal the denial of his § 440.10 motion. (Mot. for Leave to Appeal, *People v. Rosario*, AD No. 2012-04195 (App. Div. Feb. 22, 2012).) He asserted that the indictments to which he had pleaded guilty were unsupported by sufficient evidence, and that he had been denied the effective assistance of counsel at resentencing. (*See id.*). The Appellate Division denied the motion on July 12, 2012. (*See* Decision & Order, *People v. Rosario*, AD No. 2012-04195 (App. Div. July 12, 2012).) Petitioner then sought leave to appeal the Appellate Division's order to the Court of Appeals, contending "that the trial court's refusal to allow [him] to withdraw his guilty plea was an abuse of discretion as a matter of law." (Application, *People v. Rosario*, Ind. No. 1771N/08 (N.Y. July 26, 2012).) The Court of Appeals dismissed petitioner's application on November 5, 2012. (Order Dismissing Leave, *People v. Rosario*, Ind. No. 1771N/08 (N.Y. Nov. 5, 2012).)

2. The Instant Petition

Petitioner filed a *pro se* petition for a writ of habeas corpus on January 7, 2013. The petition raises two issues related to petitioner's resentencing. First, petitioner argues that he was denied effective assistance of counsel based on counsel's failure to advise him of his right to withdraw his guilty plea at resentencing. (Pet. 6.[5]) Second, petitioner claims that the trial judge erred by failing to inform him of the options available to him at resentencing. (*Id.*) Respondent filed a memorandum of law in opposition to the petition on April 4, 2013.

---

[5] "Pet." refers to Rosario's petition filed in this case. The Court cites to the page numbers assigned by ECF.

The Court has fully considered the submissions and arguments of the parties.

II. STANDARD OF REVIEW

To determine whether petitioner is entitled to a writ of habeas corpus, a federal court must apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "'Clearly established Federal law'" is comprised of "'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412–13. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* at 413.

AEDPA establishes a deferential standard of review: "'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). Additionally, while "'[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.'" *Id.* (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact . . . are reviewed *de novo*.'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)).

III. DISCUSSION

A. Procedural Bar

As an initial matter, respondent contends that petitioner's claim concerning the trial judge's failure to inform him about post-release supervision is unexhausted. For the following reasons, the Court concludes that the claim is exhausted but procedurally barred.

1. Exhaustion

A district court shall not review a habeas petition unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). Although a state prisoner need not petition for certiorari to the United States Supreme Court to exhaust his claims, *see Lawrence v. Florida*, 549 U.S. 327, 333 (2007) (citing *Fay v. Noia*, 372 U.S. 391, 435–38 (1963)), petitioner must fairly present his federal constitutional claims to the highest state court having jurisdiction over them. *See Daye v. Attorney Gen. of N.Y.*, 696 F.2d 186, 191 (2d Cir. 1982) (en banc). Exhaustion of state remedies requires that a petitioner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)) (alteration in original) (quotation marks omitted).

Passage through the state courts, in and of itself, "is not sufficient." *Picard*, 404 U.S. at 275. To provide the State with the necessary "opportunity," the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), alerting that court to the federal nature of the claim and "giv[ing] the state courts one full

opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Duncan*, 513 U.S. at 365–66. "A petitioner has fairly presented his claim only if he has informed the state court of both the factual and the legal premises of the claim he asserts in federal court." *Jones v. Keane*, 329 F.3d 290, 294–95 (2d Cir. 2003) (quoting *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997)) (internal quotation marks omitted). "Specifically, [petitioner] must have set forth in state court all of the essential factual allegations asserted in his federal petition; if material factual allegations were omitted, the state court has not had a fair opportunity to rule on the claim." *Daye*, 696 F.2d at 191–92.

To that end, "[t]he chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court." *Daye*, 696 F.2d at 192 (footnote omitted). Therefore, the only exception to this rule would be if the petitioner can show "good cause" for not exhausting the claim. *Rhines v. Weber*, 544 U.S. 270, 277 (2005). The petitioner should "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The court will allow "stay and abeyance" and hear unexhausted claims in very limited circumstances. *Rhines*, 544 U.S. at 277. Additionally, the court should not grant a petitioner stay and abeyance if the claim would be meritless even if it was exhausted. (*Id.*)

2. State Procedural Requirements

As with a failure to exhaust a claim, a failure to satisfy the state's procedural requirements deprives the state courts of an opportunity to address the federal constitutional or statutory issues in a petitioner's claim. *Coleman*, 501 U.S. at 731–32. "[A] claim is procedurally defaulted for the purposes of federal habeas review where 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Reyes v. Keane*, 118 F.3d 136, 140 (2d Cir. 1997) (quoting *Coleman*, 501 U.S. at 735) (emphasis omitted). Where the petitioner "can no longer obtain state-court review of his present claims on account of his procedural default, those claims are . . . to be deemed exhausted." *DiGuglielmo v. Smith*, 366 F.3d 130, 135 (2d Cir. 2004). Notably, for exhaustion purposes, "a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Reyes*, 118 F.3d at 139 (quoting *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991)).

Even where a petitioner properly exhausts his claim, however, exhaustion "does not automatically entitle the habeas petitioner to litigate his or her claims in federal court. Instead, if the petitioner procedurally defaulted those claims, the prisoner generally is barred from asserting those claims in a federal habeas proceeding." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (citing *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Coleman*, 501 U.S. at 744–51). "[T]he procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents

federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default." *Gray*, 518 U.S. at 162 (citations omitted).

The procedural bar rule in the review of applications for writs of habeas corpus is based on the comity and respect accorded to state judgments. *See House v. Bell*, 547 U.S. 518, 536 (2006). The purpose of this rule is to maintain the delicate balance of federalism by retaining a state's rights to enforce its laws and to maintain its judicial procedures as it sees fit. *Coleman*, 501 U.S. at 730–31.

Once it is determined that a claim is procedurally barred under state rules, a federal court still may review such a claim on its merits if the petitioner can demonstrate both cause for the default and prejudice resulting therefrom, or if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice. *Id.* at 750. A miscarriage of justice is demonstrated in extraordinary cases, such as where a constitutional violation results in the conviction of an individual who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). To overcome procedural default based on miscarriage of justice, the petitioner must demonstrate that, "in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt'" and would require "'new reliable evidence . . . that was not presented at trial.'" *House*, 547 U.S. at 537 (quoting *Schlup v. Delo*, 513 U.S. 324, 327 (1995)).

### 3. Application

"The burden of proving exhaustion lies with the habeas petitioner." *Cartagena v. Corcoran*, No. 04-CV-4329 (JS), 2009 WL 1406914, at *3 (E.D.N.Y. May 19, 2009). In the instant case, the Court concludes that petitioner has not met that burden with respect to his claim that the trial judge failed to advise him of his right to withdraw his guilty plea.[6] Specifically, petitioner did not raise this claim at all in his February 22, 2012 motion to the Appellate Division, in which he sought leave to appeal the denial of his § 440.10 motion. Even though petitioner had raised the issue in his § 440.10 motion in the trial court,[7] his failure to raise the claim before the Appellate Division deprived the Appellate Division of the opportunity to review it. Accordingly, the claim is unexhausted. *See, e.g.*, *Edsall v. Marshall*, No. 08-CV-0673 (MAT), 2010 WL 4140715, at *5 n.3 (W.D.N.Y. Oct. 21, 2010) ("Because the Appellate Division was not given the opportunity to review this claim, it is technically unexhausted." (citing *Pesina v. Johnson*, 913 F.2d 53 (2d Cir. 1990))); *cf. Jordan v. Lefevre*, 206 F.3d 196, 198 (2d Cir. 2000) (holding that a claim was unexhausted where petitioner had raised it in lower courts, but had failed to raise it in his application for leave to appeal to the New York Court of Appeals); *Grey*, 933 F.2d at 120 (same).

When a claim in a federal habeas petition has not been exhausted, the federal court may determine that no available procedures remain in state court by which a petitioner may exhaust the claims. *See* 28 U.S.C. § 2254(b) (petition shall not be

---

[6] Respondent does not dispute that petitioner has properly exhausted his ineffective assistance of counsel claim.

[7] Contrary to respondent's argument, petitioner did not raise this claim for the first time in the trial court in his reply brief. As noted *supra*, in petitioner's opening brief in support of his § 440.10 motion, petitioner challenged the validity of his guilty plea in light of the fact that the trial judge had failed to advise him of the mandatory five-years of post-release supervision.

granted unless exhaustion has occurred or "there is absence of available State corrective process"); *see also Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001). "In such a case the habeas court theoretically has the power to deem the claim exhausted." *Aparico*, 269 F.3d at 90 (citing *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997)). Such is the case here. The time has passed for petitioner to move in the Appellate Division for leave to appeal the denial of his § 440.10 motion on the basis of his guilty plea claim. *See* N.Y. CPL § 460.10(4)(a) ("Within thirty days after service upon the defendant of a copy of the order sought to be appealed, the defendant must make application pursuant to section 460.15 for a certificate granting leave to appeal to the intermediate appellate court."). Accordingly, the Court deems this claim exhausted but procedurally barred. *See, e.g.*, *Edmee v. Coxsackie Corr. Facility*, No. 09-CV-3940 (BMC), 2009 WL 3318790, at *2 (E.D.N.Y. Oct. 14, 2009) ("The failure to timely appeal the denial of petitioner's § 440.10 motion means that the claim is not only unexhausted, but procedurally barred under state law because it is too late to take that appeal and a state court would dismiss it on that ground."); *Rodriguez v. Ercole*, No. 08-CV-2074, 2008 WL 4701043, at *9 (S.D.N.Y. Oct. 24, 2008) (same); *Thomas v. Greiner*, 111 F. Supp. 2d 271, 276–78 (S.D.N.Y. 2000) (same).

Where a claim is procedurally defaulted from review because it was not fairly presented to the state courts, the federal court has the authority to consider the claim only when the petitioner can establish both cause for the procedural default and actual prejudice resulting from it, or that the federal court's failure to consider the claim will result in a fundamental miscarriage of justice. *See Schlup*, 513 U.S. at 318–21; *Reed v. Ross*, 468 U.S. 1, 11–13 (1984); *Grey*, 933 F.2d at 121. Petitioner has shown neither cause and prejudice, nor a fundamental miscarriage of justice. Moreover, there is no claim of actual innocence. Thus, petitioner's guilty plea claim remains procedurally barred and outside the scope of federal habeas review.

For the aforementioned reasons, petitioner's guilty plea claim is procedurally barred. However, in an abundance of caution, this Court addresses the merits of that claims *infra*, and finds that it is meritless.

### B. Merits Analysis

#### 1. Ineffective Assistance of Counsel

Petitioner contends that he received ineffective assistance of counsel—specifically, that his counsel failed to advise him of his right to withdraw his guilty plea at his resentencing hearing. For the following reasons, this Court determines that petitioner is not entitled to habeas relief on this basis.

##### a. Legal Standard

The standard for determining whether counsel was constitutionally ineffective is well settled. Under *Strickland v. Washington*, a habeas petitioner is required to establish two elements in order to state a successful claim for ineffective assistance of counsel: (1) "counsel's representation fell below an objective standard of reasonableness"; and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 680, 694 (1984).

The first prong requires a showing that counsel's performance was deficient. However, "[c]onstitutionally effective counsel embraces a 'wide range of

professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690). The performance inquiry examines the reasonableness of counsel's actions under all circumstances, keeping in mind that a "'fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight.'" *Id.* (quoting *Rompilla v. Beard*, 545 U.S. 374, 408 (2005)). In assessing performance, a court "must apply a 'heavy measure of deference to counsel's judgments.'" *Id.* (quoting *Strickland*, 466 U.S. at 691). "A lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision," and "'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *DeLuca v. Lord*, 77 F.3d 578, 588 & n.3 (2d Cir. 1996) (quoting *Strickland*, 466 U.S. at 690–91). "However, 'strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" *Id.* (quoting *Strickland*, 466 U.S. at 690–91).

The second prong focuses on prejudice to a petitioner. A petitioner is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "Reasonable probability" means that the errors were of a magnitude such that they 'undermine[] confidence in the outcome.'" *Pavel v. Hollins*, 261 F.3d 210, 216 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 694). "'[T]he question to be asked in assessing the prejudice from counsel's errors . . . is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt.'" *Henry v. Poole*, 409 F.3d 48, 63–64 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 695). "'An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'" *Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 691). Moreover, "[u]nlike the determination of trial counsel's performance under the first prong of *Strickland*, the determination of prejudice may be made with the benefit of hindsight." *Hemstreet v. Greiner*, 491 F. 3d 84, 91 (2d Cir. 2007) (internal citation and quotation marks omitted).

This Court proceeds to examine petitioner's ineffective assistance of counsel claim, keeping in mind that he bears the burden of establishing both deficient performance and prejudice. *United States v. Birkin*, 366 F.3d 95, 100 (2d Cir. 2004). As set forth below, petitioner's claim fails to satisfy both prongs of the *Strickland* test.

### b. Application

First, upon review of the record as a whole, the Court concludes that petitioner has not carried his burden to show deficient performance on the part of his attorney. Given petitioner's two prior convictions for drunk driving, petitioner faced up to seven years' imprisonment. (*See* Resp't's Mem. at 12.) Defense counsel secured a more lenient sentence by effectively portraying petitioner in the most favorable light to the Court. (*See* S. at 7–9.) In addition, counsel ensured that petitioner was provided with adequate medical attention while in prison. (*Id.*) Indeed, at the end of the first sentencing proceeding, the sentencing judge recognized

counsel's representation of petitioner, telling petitioner that his attorney had "done an outstanding job" for him. (*Id.* at 14–15.)

Moreover, at resentencing, the sentencing judge told petitioner he had "various options," which he "could talk about with [his] attorney." (R. at 2.) Then the sentencing court asked defense counsel what he wanted to do, and defense counsel indicated that defendant was ready to be resentenced. (*Id.* at 2–3.) Moments later, defense counsel informed the court that he had spoken to petitioner before resentencing about petitioner's desire to serve his sentence at Fishkill Correctional Facility, so that petitioner could enter a drunk driving rehabilitation program. (*Id.* at 3.) All of the foregoing facts indicate that defense counsel provided effective representation at sentencing and resentencing—and they also suggest that defense counsel spoke to petitioner about his options after learning about the sentencing judge's initial error concerning post-release supervision. In sum, "the overall favorable disposition of petitioner's case belies his ineffective assistance claim[]." *Belle v. Superintendent*, No. 11-CV-0657 (NAM), 2013 WL 992663, at *12 (N.D.N.Y. Mar. 13, 2013); *see also Seifert v. Keane*, 74 F. Supp. 2d 199, 206 (E.D.N.Y. 1999) ("Given the favorable nature of petitioner's plea, the court cannot say that counsel's performance was deficient . . . ."), *aff'd*, 205 F.3d 1324 (2d Cir. 2000).

Second, even assuming *arguendo* that petitioner's counsel failed to inform petitioner of his right to withdraw his guilty plea at the resentencing hearing, and that such a failure fell below an objective standard of reasonableness, the Court concludes that petitioner has not demonstrated prejudice from any deficient performance. Nothing in the record indicates that petitioner would have withdrawn his guilty plea had he been told that he could have done so. Petitioner does not so allege in his habeas petition, and, moreover, he has "alleged no special circumstances that might support the conclusion that he placed particular emphasis on [post-release supervision] in deciding whether or not to plead guilty." *Hill v. Lockhart*, 474 U.S. 52, 60 (1985). In fact, the record shows that petitioner was most concerned about his prison sentence, and by pleading guilty, he secured less time in prison than he could have received had he gone to trial. Petitioner presents no facts establishing that he would have sought to undo the results of his guilty plea in order to avoid two more years of post-release supervision.

2. Failure to Advise Petitioner of Right to Withdraw Guilty Plea

Petitioner also asserts that the trial court should have advised him of his right to withdraw his guilty plea at the resentencing hearing. The crux of this claim is that petitioner's guilty plea was not made voluntarily, knowingly, and intelligently because he was unaware of the post-release supervision term accompanying his sentence. For the reasons discussed below, the Court concludes that this claim has no merit.

a. Legal Standard

"The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill*, 474 U.S. at 56 (internal quotation marks and citations omitted); *see also Parke v. Raley*, 506 U.S. 20, 28–29 (1992) (plea is valid when it is made knowingly and voluntarily). Where "a defendant is represented by counsel during the plea process, and enters his plea upon the advice of counsel, the voluntariness of

the plea depends upon whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Hill*, 474 U.S. at 56 (internal quotation marks and citations omitted).

The Supreme Court has held that, under the Due Process Clause of the United States Constitution, a trial court can only accept a guilty plea that is made "voluntarily, knowingly, and intelligently, with sufficient awareness of relevant circumstances and likely consequences." *United States v. Adams*, 448 F.3d 492, 497 (2d Cir. 2006) (internal quotation marks and citations omitted); *accord Godinez v. Moran*, 509 U.S. 389, 400 (1993). Although a guilty plea "is not ordinarily subject to collateral attack," it "may be collaterally attacked if it was not knowing or not voluntary." *Salas v. United States*, 139 F.3d 322, 324 (2d Cir. 1998); *see also U.S. ex rel Scott v. Mancussi*, 429 F.2d 104, 107 (2d Cir. 1970) ("[A] conviction which is based upon an involuntary plea of guilty is inconsistent with due process of law and is subject to collateral attack by federal habeas corpus.").

"A plea is considered 'intelligent if the accused had the advice of counsel and understood the consequences of his plea, even if only in a rudimentary way,' and it is considered 'voluntary if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally.'" *Manzullo v. New York*, No. 07-CV-744 (SJF), 2010 WL 1292302, at *5 (E.D.N.Y. Mar. 29, 2010) (quoting *Miller v. Angliker*, 848 F.2d 1312, 1320 (2d Cir. 1988)). Indeed, a "plea of guilty entered by one fully aware of the direct consequences of the plea is voluntary in a constitutional sense unless induced by threats, misrepresentations, or perhaps by promises that are by their nature improper." *Bousley v. United States*, 523 U.S. 614, 619 (1998) (internal alteration, citations, and quotation marks omitted).

b. Application

Under New York law, the trial court should have advised petitioner of the five-year mandatory post-release supervision. In *People v. Catu*, the Court of Appeals held that, "[b]ecause a defendant pleading guilty to a determinate sentence must be aware of the postrelease supervision component of that sentence in order to knowingly, voluntarily and intelligently choose among alternative courses of action, the failure of a court to advise of postrelease supervision requires reversal of the conviction." 4 N.Y.3d 242, 245 (2005). It follows that, having erroneously informed petitioner that he was subject to only three years of post-release supervision at sentencing, the sentencing court should have allowed petitioner to withdraw his guilty plea under New York law.

However, under AEDPA, this Court may grant relief only if the state court "unreasonably applied clearly established Federal law." *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations omitted) (quoting 28 U.S.C. § 2254(d)(1)). "'Clearly established Federal law' means 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Green*, 414 F.3d at 296 (quoting *Williams*, 529 U.S. at 412). Therefore, this Court cannot grant a petition for habeas corpus if the state court unreasonably applied *state* law; instead, this Court may grant relief only if the state court unreasonably applied federal law that has been clearly defined by Supreme Court precedents (or was a result of an unreasonable determination of the facts in light of the record). *See Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) ("[T]his Court has held on numerous

occasions that it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." (citations and internal quotation marks omitted)).

"Unfortunately for Petitioner, there is no clearly established Supreme Court precedent that a defendant must be advised of mandatory post-release supervision prior to entering a guilty plea. Many federal courts in this Circuit have recently come to this same conclusion." *Sanchez v. Keller*, No. 06-CV-3370, 2007 WL 4927791, at *7 (S.D.N.Y. Dec. 4, 2007) (report & recommendation); *see, e.g.*, *Wilens v. Superintendent of Clinton Corr. Facility*, No. 11-CV-1938 (JFB), 2014 WL 28995, at *8 (E.D.N.Y. Dec. 31, 2013) (holding that "there is no clearly established Supreme Court precedent that a defendant must be advised of mandatory post-release supervision prior to entering a guilty plea"); *Facen v. Cully*, 787 F. Supp. 2d 278, 284 (W.D.N.Y. 2011) (stating that "the Supreme Court has never held that a mandatory term of post-release supervision is a direct consequence of a criminal conviction"); *Potter v. Green*, No. 04-CV-1343, 2009 WL 2242342, at *6 (E.D.N.Y. July 24, 2009) ("[T]here is no clearly established Supreme Court precedent that requires a state court judge to advise a defendant of mandatory [post-release supervision] before accepting a guilty plea."). In fact, as noted by the Seventh Circuit, "the Court has expressly declined to decide such an issue in the very similar context of parole." *Lockhart v. Chandler*, 446 F.3d 721, 724 (7th Cir. 2006) (citing *Lane v. Williams*, 455 U.S. 624, 630 n.9 (1982)). This Court finds the analysis contained in these cases to be persuasive.

Accordingly, the failure of the state court to inform petitioner of the correct length of post-release supervision—or to inform petitioner of his right to withdraw his guilty plea after realizing his error—is not a basis for habeas relief. *See Sanchez*, 2007 WL 4927791, at *8 ("[B]ecause the Supreme Court has never addressed the issue of whether mandatory supervised release is a direct consequence of one's conviction, the trial court's failure to inform Petitioner of his mandatory [post-release supervision] cannot be a violation of clearly established federal law. In other words, Petitioner's claim is without merit because there is no clearly established Supreme Court precedent for the trial court to have unreasonably applied."); *see also Lockhart*, 446 F.3d at 724; *Wilens*, 2014 WL 28995, at *8; *Facen*, 787 F. Supp. 2d at 284; *Menjivar v. Sears*, No. 06-CV-2854, 2007 WL 2274892, at *3 (E.D.N.Y. Aug. 7, 2007).[8]

In addition, although the foregoing analysis could end this Court's inquiry, the Court notes that petitioner must also demonstrate that "there is a reasonable probability that, but for the error, he would not have entered the plea." *Zhang v. United States*, 506 F.3d 162, 168 (2d Cir. 2007) (citation and internal quotation marks omitted). As discussed *supra*, petitioner provides no evidence that he would have withdrawn his guilty plea had the sentencing court informed him of his opportunity to do so, and it appears highly improbable that the post-release supervision played any role in his decision to accept or reject the plea. Therefore, as in *Sanchez*, "[p]etitioner's claim—that the failure to inform him of mandatory [post-release supervision] prior to the entry of his guilty plea was a violation of his due process rights—can be dismissed as harmless error, because even if he had known about the [post-release supervision], such knowledge would likely not have

---

[8] As stated *supra*, even if the state court did violate New York law, petitioner is also not entitled to relief because this claim is procedurally barred.

affected his decision." 2007 WL 4927791, at *9.

## IV. CONCLUSION

For the reasons set forth herein, this Court finds that petitioner has demonstrated no basis for habeas relief under 28 U.S.C. § 2254. Both of petitioner's claims are plainly without merit, and one of his claims is procedurally barred. Therefore, the petition for a writ of habeas corpus is denied. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
Joseph F. Bianco
United States District Judge

Dated: June 11, 2014
      Central Islip, New York

\* \* \*

Petitioner proceeds *pro se*. Respondent is represented by Kathleen M. Rice, District Attorney, Nassau County, by Ilisa T. Fleischer, 262 Old Country Road, Mineola, NY 11501.